**KOLLER LAW LLC**
David M. Koller, Esq. (037082002)
Jordan D. Santo, Esq. (152892015)                           *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **BLAZE FOGLIETTA,** | : | Civil Action No. |
| **65 Willow Cedar Way** | : | |
| **Blackwood, NJ 08012** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| **AMAZON.COM SERVICES LLC** | : | |
| **240 Mantua Grove Road** | : | |
| **West Deptford, NJ 08066** | : | |
| | : | |
| **410 Terry Avenue N** | : | |
| **Seattle, WA 98109** | : | |
| Defendant. | : | |

### CIVIL ACTION

Plaintiff, Blaze Foglietta (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Amazon.com Services LLC (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), and the New Jersey Law Against Discrimination ("NJLAD"). In support thereof, Plaintiff avers as follows:

### **THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Defendant Amazon.com Services LLC is an e-commerce

services provider with a location at 240 Mantua Grove Road, West Deptford, NJ 08066 and corporate headquarters located at 410 Terry Avenue N, Seattle, WA 98109.

4. Defendant is an entity engaged in an industry or activity affecting commerce which employs 50 or more employees in all of its offices for each working day during each of 20 or more calendar workweeks in the current or preceding year relevant to the matter at issue.

5. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. Plaintiff exhausted his administrative remedies under the ADA and PHRA.

15. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation against Defendant.

16. The Charge was assigned a Charge Number 530-2024-09514 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated July 18, 2025.

18. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

19. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to his NJLAD claims.

20. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

21. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

22. In or around August 2020, Defendant hired Plaintiff in the position of Inbound Dock Worker.

23. Plaintiff was well qualified for his position and performed well.

## PLAINTIFF'S DISABILITIES

24. Plaintiff has the serious medical conditions of Generalized Anxiety Disorder ("GAD"), Major Depressive Disorder ("MDD"), Body Dysmorphia and Binge Eating Disorder.

25. The aforementioned serious medical conditions are considered to be disabilities under the Americans with Disabilities Act of 1990, as amended ("ADA") and the New Jersey Law Against Discrimination ("NJLAD").

26. The major life activities affected by GAD, MDD, Body Dysmorphia and Binge Eating Disorder, include, but are not limited to, eating, concentrating, working and caring for one's self.

## PLAINTIFF WAS REQUIRED TO TAKE MULTIPLE LEAVES OF ABSENCES DUE TO HIS DISABILITIES

27. Throughout his employment with Defendant, Plaintiff took at least ten (10) medical leaves of absence related to his disabilities in order to seek treatment.

28. Most leaves of absence were over one (1) week long, and at least two (2) were over one (1) month long.

29. These leave of absences were approved through Human Resources.

30. Plaintiff submitted all proper medical documentation and leave paperwork through Defendant's general medical leave email and/or company medical leave online portal.

### PLAINTIFF TOOK FMLA LEAVE DUE TO HIS DISABILITIES

31. From September to October 2023, Plaintiff took Family and Medical Leave Act ("FMLA") leave to go to an inpatient eating disorder clinic.

### PLAINTIFF'S COWORKERS CONTACTED LOSS PREVENTION OUT OF CONCERN FOR PLAINTIFF DUE TO HIS DISABILITIES

32. In or around early June 2024, Plaintiff's coworkers reached out to Loss Prevention Department because they were concerned about Plaintiff's mental health related to his disabilities.

33. At the time, Plaintiff was considering voluntary admission in an Inpatient Psychiatric Unit.

### LOSS PREVENTION MET WITH PLAINTIFF REGARDING HIS DISABILITIES

34. On or about June 3, 2024, Plaintiff had an 80-minute meeting with Jay Last Name Unknown ("LNU"), Loss Prevention Specialist, to discuss his mental health status.

35. Plaintiff discussed his disabilities during this meeting, but Plaintiff insisted that he was okay to keep working at Defendant.

### LOSS PREVENTION BEGAN TO MONITOR PLAINTIFF AT WORK

36. For the next two (2) days, Plaintiff noticed that Jay followed him around Defendant during his shift.

37. Jay watched Plaintiff hug his female coworker friend, Christin Westergom, Associate, and dance around to music at Defendant with Westergom during free time.

### LOSS PREVENTION QUESTIONED PLAINTIFF'S FEMALE COWORKER ABOUT THEIR RELATIONSHIP AND VOICED CONCERNS REGARDING PLAINTIFF'S DISABILITIES

38. Jay pulled Westergom aside and asked her if she was in a romantic or sexual relationship with Plaintiff or words to that effect.

39. Jay said he was concerned Plaintiff would hurt Westergom and her son, referring to Plaintiff's mental health issues.

40. Westergom firmly denied this.

41. Importantly, Plaintiff is a homosexual man.

42. Thus, Plaintiff is not romantically nor sexually interested in women.

43. Westergom stated that she is just friends with Plaintiff.

### DEFENDANT QUESTIONED PLAINTIFF ABOUT AN OFF-WORK SITE INCIDENT

44. On or about June 5, 2024, approximately two (2) days after the June 3, 2024, meeting with Jay, Jay and Stephanie LNU, Human Resources Business Partner, pulled Plaintiff into a meeting.

45. Jay accused Plaintiff of attempting to force Westergom into his car at a Red Lobster parking lot during non-work hours.

46. This was a completely fabricated allegation.

47. Plaintiff was not at all involved in this incident.

48. Nevertheless, upon information and belief, Jay and Stephanie intentionally misconstrued this claim to accuse Plaintiff of being involved in it.

49. Jay forced Plaintiff to make a statement on the spot while also knowing Plaintiff was actively suffering from mental health issues and disability symptoms at this time.

50. All Plaintiff could get out in the moment was that he "did not do this" or words to that effect.

### PLAINTIFF'S COWORKER AND SUPERVISOR DENIED PLAINTIFF'S INVOLVEMENT IN THE OFF-SITE INCIDENT

51. Both Westergom and Tana Imperiale, Dock Manager and Plaintiff's supervisor, told Human Resources that Plaintiff had nothing to do with this incident, nor had he ever wrongly touched or threatened Westergom.

52. Westergom and Imperiale reiterated that Plaintiff and Westergom were friends and that Plaintiff is homosexual.

### DEFENDANT SUSPENDED PLAINTIFF

53. Nevertheless, on or about June 5, 2024, Jay suspended Plaintiff for the alleged incident.

54. Plaintiff remained on suspension through June 30, 2024.

55. During this time, Plaintiff attempted to call Human Resources at least three (3) times to make a more thorough statement and provide additional exonerating evidence.

56. Human Resources did not answer Plaintiff's calls and did not call him back to gather more information.

57. Defendant did not conduct a thorough investigation.

### DEFENDANT TERMINATED PLAINTIFF

58. On or about June 30, 2024, Stephanie called Plaintiff and terminated him for the alleged incident.

59. Defendant discriminated against Plaintiff due to his disabilities and retaliated against him for engaging in protected activity in violation of the ADA and the NJLAD.

60. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – DISABILITY DISCRIMINATION
### AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

61. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

62. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

63. Plaintiff was qualified to perform the job.

64. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

65. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

66. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

67. Plaintiff's disabilities motivated Defendant's decision to take adverse actions against Plaintiff.

68. The purported reason for Defendant's decision is pretextual.

69. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

70. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

71. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – DISABILITY DISCRIMINATION
## NEW JERSEY LAW AGAINST DISCRIMINATION

72. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

73. Plaintiff is a "qualified individual with a disability" as that term is defined under the NJLAD because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

74. Plaintiff was qualified to perform the job.

75. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

76. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

77. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

78. Plaintiff's disability motivated Defendant's decision to terminate Plaintiff.

79. The purported reason for Defendant's decision is pretextual.

80. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

81. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered

damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

82. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

83. Plaintiff engaged in activity protected by the ADA.

84. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

85. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

86. Defendant's Conduct was willful or with reckless disregard to Plaintiff's Federal Statutory Rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IV – RETALIATION
## NEW JERSEY LAW AGAINST DISCRIMINATION

87. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

88. Plaintiff engaged in activity protected by the NJLAD.

89. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

90. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT V – RETALIATION
### THE FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED

91. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

92. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for leave under the FMLA.

93. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA Leave to care for his own serious medical conditions.

94. Plaintiff gave Defendant sufficient information to allow it to understand that he needed leave for FMLA-qualifying reasons.

95. As a result of Plaintiff's attempt to invoke his FMLA rights, by requesting and utilizing his FMLA rights, Defendant has retaliated against Plaintiff by terminating his employment.

96. Defendant's motivation for retaliating against Plaintiff was connected causally to Plaintiff's FMLA leave.

97. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

98. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

99. Plaintiff demands judgment against Defendant for all available equitable relief including,

but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

100. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Blaze Foglietta, requests that the Court grant him the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA, the NJLAD and the FMLA.

(j) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: October 16, 2025     By: */s/David M. Koller*
                           David M. Koller, Esquire

13

Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*